### DIRECTV, INC., Plaintiff,

v.

### Shawn HEDGER, Defendant.

### No. 1:03–CV–733.

United States District Court,
W.D. Michigan,
Southern Division.

April 20, 2004.

---

Angela Emlet–Dardas, Honigman Miller Schwartz and Cohn LLP (Lansing), Lansing, MI, Norman Ankers, Honigman Miller Schwartz and Cohn LLP (Detroit), Detroit, MI, Brigham Cook Smith, Janice Keays Smith, Honigman Miller Schwartz and Cohn LLP (Lansing), Lansing, MI, for Plaintiff.

## *OPINION*

QUIST, District Judge.

Plaintiff, DIRECTV, Inc. ("DIRECTV"), has sued Defendant, Shawn Hedger ("Hedger"), alleging that he violated the Federal Communications Act of 1934, 47 U.S.C. § 605, the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 and the Communications Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2510–22 (the "Wiretap Act"), and Michigan common law by purchasing and using access cards and other devices ("Pirate Access Devices") to decrypt, receive, and view DIRECTV's encrypted satellite transmissions of television programming. Hedger failed to appear or defend, and on October 6, 2003, the Clerk entered a default against Hedger. On January 22, 2004, the Court issued an Order setting a hearing on damages on March 11, 2004, and requiring DIRECTV to serve a copy of the Order on Hedger and certain other

defaulting defendants. On January 23, 2004, DIRECTV filed a proof of service confirming service on Hedger. The damages hearing was held on March 11, 2004. Hedger failed to appear or offer evidence regarding damages. DIRECTV presented evidence and argument in support of its request for damages. The matter is now ready for decision.

On May 25, 2001, DIRECTV executed writs of seizure at the mail shipping facility used by several major suppliers of Pirate Access Devices, including Vector Technologies; DSS–Stuff; Shutt, Inc.; Intertek; WhiteViper; and DSS–Hangout (the "Suppliers"). Among other things, DIRECTV obtained shipping records, email communications, and credit card receipts identifying purchasers, or end-users, of illegal Pirate Access Devices from the Suppliers. DIRECTV used that information to obtain settlements (including monetary payments, stipulated injunctive relief, and turnover of the devices) from end-users or, failing a settlement, to sue end-users in federal court. This is one of perhaps thousands of suits DIRECTV has filed throughout the country against end-users.

■ DIRECTV alleged in its complaint that Hedger purchased a "Terminator Bootloader Board" ("Bootloader") on or about March 2, 2001, from Vector Technologies. DIRECTV also alleged that Hedger used that device to decrypt and view, and assisted others in decrypting and viewing, DIRECTV's encrypted satellite signal. It is well-established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110–11 (6th Cir.1995); *Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir.1993). Therefore, by his default, Hedger has admitted all facts to establish his liability. DIRECTV is entitled to a default judgment pursuant to Fed.R.Civ.P. 55(b)(1). However, DIRECTV must still establish its damages. *Antoine,* 66 F.3d at 110.

DIRECTV requests an award of damages in the amount of $10,000 plus $850 as reasonable attorney's fees and costs. DIRECTV requests statutory damages under the Communications Act, 47 U.S.C. § 605, and the Wiretap Act, 18 U.S.C. § 2520. Under the Communications Act, an aggrieved party such as DIRECTV may recover statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just."[1] 47 U.S.C. § 605(e)(3)(C)(i)(II). An aggrieved party is also entitled to reasonable attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

■ Pursuant to the Wiretap Act, the court may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c)(2). In addition, a court may award reasonable attorney's fees and costs. 18 U.S.C. § 2520(b)(3).

---

1. A court also has discretion to increase the award to not more than $100,000 where the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," or to decrease the award to not less than $250 where the court finds that the defendant "was not aware and had no reason to believe that his acts constituted a violation of" the Communications Act. 47 U.S.C. § 605(e)(3)(C)(ii), (iii). The Court finds that there are no facts in this case calling for either an increase or a decrease in the amount of statutory damages.

The Sixth Circuit has held that the proper inquiry in assessing damages under § 2520(c)(2) is as follows:

(1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any. *See* 18 U.S.C. § 2520(c)(2)(A).

(2) The court should next ascertain the number of days that the statute was violated, and multiply by $100. *See* 18 U.S.C. § 2520(c)(2)(B).

(3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award. *See id.*

(4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it. *See* 18 U.S.C. § 2520(c)(2).

*Dorris v. Absher*, 179 F.3d 420, 430 (6th Cir.1999). Here, DIRECTV is not seeking actual damages and did not offer any evidence as to the number of days the violation occurred. Therefore, under this statute, the Court may exercise its discretion to either award DIRECTV $10,000 or to award no damages at all. *Id.; see also Directv, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1347–48 n. 28 (M.D.Fla.2003) ("Although a district court has the discretion to award the full amount of statutory damages authorized under § 2520(c)(2) or none at all, Congress did not grant district courts authority to prescribe an amount falling between those two choices."). However, if the Court determines that an award of damages for some amount less than $10,000 is appropriate, that award must be made pursuant to 47 U.S.C. § 605(a), which provides for a range of damages.

In determining the proper amount of damages, the Court is aware that some courts have awarded minimal statutory damage awards in similar DIRECTV cases. *See DIRECTV, Inc. v. Kaas*, 294 F.Supp.2d 1044, 1049 (N.D.Iowa 2003) (concluding that an award of $1,000 was sufficient because there was no evidence that the defendant profited from the device and, although it was a reasonable assumption, there was no evidence that the defendant even used the device); *DIRECTV, Inc. v. Albright*, No. Civ. A. 03–4603, 2003 WL 22956416, at *3 (E.D.Pa. Dec. 9, 2003) (awarding $1,000 in damages under § 605(e) because there was no evidence that the defendant acted wilfully or sought to profit from use of the device). At least one other court has concluded that an award of $10,000 was proper. *See DirecTV, Inc. v. Braun*, No. CIV 3:03CV937 (SRU), 2004 WL 288805, at *2 (D.Conn. Feb. 9, 2004). Based upon all of the relevant considerations, the Court concludes that an award of $10,000 is appropriate. By virtue of his default, Hedger has admitted that he purchased the Bootloader and that he used that device to illegally intercept DIRECTV's signal. DIRECTV has presented other evidence showing that Hedger was a DIRECTV subscriber and had all of the equipment required to intercept DIRECTV's signal, so there is no question that Hedger possessed the means to receive the signal. In addition, DIRECTV's evidence shows that Hedger disconnected his DIRECTV service eleven days after he purchased the Bootloader. The $10,000 award takes into consideration that DIRECTV offers an extensive variety of programming and that an individual with unrestricted access to these programs could easily receive thousands of dollars worth of free viewing over the course of just one year. An award in the maximum amount is also proper because there is no evidence that Hedger has surrendered the device to DIRECTV. *See Cmty. Television Systems, Inc. v. Caruso*, 134 F.Supp.2d 455, 460 (D.Conn.2000). More-

over, DIRECTV has presented evidence showing that it incurs significant expense and employs significant resources in order to combat piracy. (Whalen Aff. ¶¶ 5–11.) This expense, of course, is another aspect of DIRECTV's damages beyond the loss of subscription and pay-per-view fees, and is appropriately reflected in the award of statutory damages in order to deter future signal theft by Hedger and others. *See Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F.Supp.2d 161, 166 (S.D.N.Y.1999) (in determining statutory damages under the Trademark Act, noting that the deterrent effect upon the defendant and others is a proper consideration because awards of statutory damages serve both compensatory and punitive purposes) (citing *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1117 (2d Cir.1986)).

Finally, DIRECTV requests an award of attorney's fees in the amount of $850. The Court concludes that this is a reasonable fee amount for the work performed in this case. Therefore, the Court will award DIRECTV $10,000 in statutory damages and $850 in attorney's fees.

An Order consistent with this Opinion will be entered.